The last case this morning is Crall v. Wilson, 18, 1313. Mr. Bjorst. May I proceed? Yes. Thank you. Good morning. Good morning, your honors. May it please the court, Anthony Bjorst, here on behalf of the appellant, Mr. Crall. The defendant, Mr. Wilson, Officer Wilson, walked into Mr. Crall's home without a warrant or probable cause to arrest Mr. Crall, without a reasonable belief that a friend who was in Mr. Crall's home actually lived there. Well, did he ever arrest Crall? Yeah, he did. And that was, what, after the dog went in the bedroom? Is that correct? Correct. Okay, that's correct. Officer Wilson set the police dog on Mr. Crall. The police dog bit Mr. Crall. Well, you left out some facts. Yeah. He repeatedly asked whoever was in the bedroom to come out, right, first? He did. Okay. He did. I agree. The police dog bit Mr. Crall in multiple places. We maintain that Officer Wilson's actions violated Mr. Crall's Fourth Amendment rights, and that those rights were clearly established at the time of Officer Wilson's actions. But the fundamental question we have to grapple with is, was this temporary visitor or temporarily living is the better thing to say? What is the very best case that you can cite as to that will help us decide the difference between a guest, a resident, and this temporary residing middle ground that we're in? Well, I mean, I guess the very best case would be Perez v. Simmons, excuse me, the Ninth Circuit case, which is cited in a footnote in the magistrate's ruling, cited in my brief, in the body of the brief. But Perez v. Simmons explicitly says that a guest is distinguishable from a resident. But there the evidence was that the person they were after occasionally stayed at his sister's house. Here it's a little different. What they were told is that he was temporarily staying with Mr. Crall. I mean, are those different? So, first of all, that's the way I framed it in the complaint, all right? And obviously, in retrospect, I did a poor job of drafting this complaint. But that's the way the complaint is framed. What did you do wrong? I don't understand. Because I said temporarily staying. So I could have framed it the way that was. When he went to the property to issue the warrant, he was told by the owner of the main residence that Crall lived in the back. And what did he say about the chap who was with him? He just said he was in the home. That's all. I thought he used the word temporarily staying. The information that Officer Wilson got about the temporarily staying was from an unknown source that led him to go to the house to begin with. And it was an unknown source. So we don't know who, but somebody said he was temporarily what? Residing? Temporarily staying? The way the complaint reads is temporarily staying. Temporarily staying. And so I get back to my question. You said you didn't do a good job. What should you have said? Perhaps I should have said he occasionally stays. I mean, you know, I think. What are the facts? The facts are that I think, I mean, I'm just going on the basis of the warrant. The warrant says that the, I think the warrant says temporarily staying. I'm not, I don't recall it. You know, Mr. Crall, I can tell you Mr. Crall. Is the warrant evidence? I don't believe it is. Mr. Crall, Mr. Crall says the guy wasn't staying there at all. I mean, that's Mr. Crall's position. So this is a motion to dismiss, right? Correct. We're stuck with what everybody pled in the complaint under Rule 12b-6. Correct. And so what was pled was temporarily staying. Correct. So if we look at the United States v. Gay from the Tenth Circuit, this court at least has held that you don't have to actually live in the residence, but you have to have some common authority over it. So here's the distinction I want to make, Your Honors, please, if you get nothing else from my words today. There's two different issues. One is, was he living there? And the other is, did the officer reasonably believe he was living there? So we agree that under Gay, under Perez, excuse me, under Valdez, under Gay and under Thompson, which are sort of the three cases that address this issue, you don't have to actually live there as long as you possess common authority or some other significant relationship. But none of the cases issued by this court have ever said neither Valdez nor Gay nor Thompson, and in fact they have explicitly stated that an officer who goes into a home and to execute a warrant on a third party must reasonably believe that that third party lives there. So whether the third party actually does live there doesn't really matter. But the officer must reasonably believe that he does. And this court has never said otherwise. Reasonably believe that he lives there or reasonably believe that he has common authority over the premise? The case law says reasonably believe that he lives there. Now the case law says common authority is equivalent to living there. Okay. So that's where you get the... So if he reasonably believes that he has common authority over the trailer. Yes, but the case law says he must reasonably believe that he lives there. The case law has never varied on that, okay? And the case law sort of interprets what living there means. And that's where you get the common authority issue. But what I said in my complaint, Your Honors, is that officer... I said it in several places. The officer had no... Paragraph 11 says the officer had reason to believe he was temporarily staying there but had no reason to believe he lived there. And then paragraph 13 says the officer knew or should have known that he did not live there. But you... The anomaly is that you also said in the complaint that the officer had been told that he was temporarily staying, not just in a house, but in this fifth-wheel trailer, which doesn't even have walls. It's got blankets. And if you equate living with common authority, which he just did, as I think appropriate under Gay and Valdez, why couldn't an objectively reasonable officer think, based on the very facts that you pleaded, that he had been told that he was temporarily staying in this place with no walls, that the arrestee had authority to go anywhere in this little bitty fifth-wheel trailer? Well, so first of all, I mean, I think the trailer had doors, but they just weren't closed, I think, on the night in question. For whatever reason, they were just using a blanket. They hadn't closed the doors. But is that in the complaint? No. So what the complaint law says, paragraph 11, the deputies had information indicating that Mr. Thompson was temporarily staying at the Mall Road address but had no reason to believe that he lived there. Paragraph 13, the deputies on scene were familiar with Mr. Thompson from prior contacts and knew or should have known that he did not live in the fifth-wheel trailer. But it's internally contradictory. Yeah. I mean, that's based on what you just said a moment ago. That's what I'm talking about. So you're saying they didn't know he lived there, but they knew he was temporarily staying there. And if our case law is that temporarily staying there is enough for them to execute the warrant, then they entered the trailer properly and we move to the excessive force claim. Okay. So here's what I'll say to that, Your Honor. First of all, if there's a contradiction in me that perhaps there is under your interpretation, I would say that the second paragraph that they knew or should have known he didn't live there trumps the first. They're not inconsistent. Okay. He didn't live there is different than temporarily staying there. And we've said temporarily staying there is enough. Well, you always said the officer was reasonable to believe he lived there. You've always said that. Always. All right. Okay. Can I back up just a little bit just to kind of see where the law is? Yes. If I go to dinner at Bacarach's home and there's a warrant. This is an unbelievable. I heard him cut you off earlier, so that's fine. In any event, if I go to dinner, I'm a guest. Yeah. A warrant, trying to get a warrant searched on me does not give an authority to break into the Bacarach home to get at me. Right. I'm a guest. Pretty clear. Is that pretty clear? Yes. If I move in with them. Because his wife throws him out, which I'm making it more believable. Well, wife picks me out and I go crying in my tears to Oklahoma. And Robert says, yep, you can move in here, please. So then fair game to search me out. Right. Just a second. Just fair game in that case. Okay. Okay. It's that temporarily staying is the problem. Right. And you use those words. And it seems to me like the circuit laws against you. Well, I use those words. And let's say, let's say Judge Bacarach said you can stay a few nights. Stay a few nights until you guys make up. Until you and your wife make up. Yeah. Are you living there then? Stay a few nights. I'm temporarily staying there.  But you know my wife, I'm living there. I mean, where do you draw the line? I mean, what I, so what I, I, you know, I don't think the 10th circuit has explicitly addressed this issue. And again, the 10th circuit has always said is that you have to, the officer has to reasonably believe he lived there. But I've asserted is that he didn't live there and the officer knew he didn't live there. Did the officer have to reasonably believe that I resided there or that I temporarily resided there? Live there is what the case law says. Now, the case law has maybe has refined the definition of live there. In the case law, every case says the officer has to reasonably believe he lived there. Let's move, before you run out of time, let's talk about maybe excessive force. Okay. I mean, excessive force claim, it's a reasonable and a standard under Graham versus Connor. This was a non-vital misdemeanor in his own home. We submit that sticking a dog on him was inappropriate under the circumstances. Okay. So we're dealing here with, I guess the question is what, all the cases I've seen on the police dog, we're assuming for the moment that they entered legally with the warrant for purposes of this issue. Correct. What cases do you rely on to say that the police officer used the police dogs within, in the instance where someone doesn't respond to a command to leave the room, we've generally upheld it, haven't we? Yes. I mean, what I would rely on is Graham versus Connor. I'd rely on a case law that says non-violent. I'm sorry, I couldn't hear what you said. Graham versus Connor, obviously Supreme Court precedent. And in those cases out of this circuit that say that non-violent misdemeanors are the least dangerous that exist. In those cases, let's say that a man's home is his castle. And that's ultimately why I'm here today, your honors. A man's home is still his castle in this country. All right. And this man was not treated that way in this case. I'll observe the rest of my time. Thank you. May it please the court. My name's Gordon Vaughn. The only defendant in this case is Greg Wilson, a former deputy with the Elbert County, Colorado Sheriff's Office. Elbert County is a small rural county about 45 minutes southeast of Denver. It has about 20,000 residents. District Court Judge Robert Blackburn, in his order adopting the Rule 12b-6 dismissal recommendations of Judge Scott Verhollich, and after noting that he had done a de novo review, he wrote as follows. So thoroughly has the magistrate judge considered and analyzed the issues raised by and inherent to the motion to dismiss that any extended exegesis on my part would be little more than a festooned reiteration of his excellent work. If you know Judge Blackburn, that is a typical of his style of writing. And in this case, it is, I believe, very much on point. I would direct the court to the recommendations of Judge Scott Verhollich. They are indeed well thought out and well written and at the risk of being too much taking. How did he characterize the nature of the occupancy? He agreed with what Mr. Crawl's representations were in his amended complaint, and that is that he was temporarily staying at that fifth wheel trailer. He also did note some other things, I think, that the complaint specifies. That is that they knew that Mr. Crawl was there. That was confirmed. They also went, and it was at night, I believe 10 o'clock at night, in which the deputies entered the fifth wheel trailer. They also noted that they were in a sleeping compartment of that fifth wheel trailer. But none of that, I mean, if he was a guest, like the hypothetical, if Judge Bacharach is having Judge Lucero over for dinner, and even if the police know Judge Lucero is there, that doesn't mean they can enter even if they have a warrant for Judge Lucero's arrest. They can't enter Judge Bacharach's house to make the arrest, right? That's Stigall, and I agree. And that's clearly established law. Agreed. Okay. So looking at this complaint where it alleges that the police officers knew that Mr. Girard did not live in the trailer, and therefore the assumption is he was a visitor, why could they enter? Well, first of all, that's a conclusory allegation, and under the Iqbal and Twombly set of cases, and the cases from this court interpreting it, that would just be a conclusory allegation. It doesn't have any factual basis. Second, it's clearly contradicted internally by the amended complaint when he says that he was temporarily staying there. One of the things that Judge Bollock noted, and I think it's notable for purposes of this argument in two bases, at footnote two of his opinion he does talk about the issue of what does it mean to temporarily stay. And so he explores what different courts, and it's in different circuits, have talked about what it means to temporarily stay, and temporarily staying is synonymous in some of these cases with temporary living. But here, the amended complaint specifically alleged that the officer had no reasonable basis to believe that he lived there. So in a vacuum, it may be theoretically possible to equate temporarily staying with living, but I don't know how you can do that and credit the complaint. Well, that's a good question, Judge Fokrok. And my answer to that is this, is that you can live in two different places, and I think that's what the court in this circuit has said in Gay, and so it's not inconsistent. Even if you accept it's true, which of course you have to if you agree that there is no basis to believe that he was living there, it's not conclusory. I think it's conclusory. That's my argument in brief, and I stick to that under Botwombly. But if you accept that that's a factual allegation, then, as Judge Verhollich said, is you can live in two different places. And so the fact that he says that you know that he doesn't live in this place but he's temporarily staying, I just think that's internally inconsistent. The way the complaint reads, I believe, it says, is that they knew from prior experience that he lived in another location. And as Judge Verhollich says, that doesn't mean you can't live in a second location. Except, I can understand how you're wanting to put this in the cubbyhole of Valdez where they said that, that people can live in two places. And so that might be the case if the plaintiff had alleged that Mr. Thompson lived in two places, but that's exactly the opposite of what's alleged in the complaint. He didn't allege that he lived in two places. He alleged specifically that he did not live in this particular place, and he even went further in the complaint and said that the officer had no reasonable basis to believe that he lived there. So how can you equate that to the theoretical situation hypothesized in Valdez where somebody lives in two places? He said that he doesn't. My point before, and not well stated, is that when you say that you're temporarily staying somewhere, you find yourself, as Judge Verhollich said, in the gray area between Payton and Stigold. And so I think that once he says that, we have him staying in the fifth wheel. And the fact that he says you don't have reason to believe that he's living there, I see your point that somehow that juxtaposes those cases in other circuits that equate living and staying. It takes us back, though, to the point that he could still be staying there, and he's still a Payton situation, not a Stigold situation, because you do fall into that gray area. Which, by the way, I just for a minute take a slight rabbit trail here, because Judge Verhollich mentions what we mentioned in our briefs we did in the district court case, is we get into this whole issue of who makes the law for qualified immunity. Because we do see the Supreme Court now, at least in Dick, is saying this has not been decided yet. And we've seen it in at least five cases most recently, I think, in Ammons, which came out in January, is that it's an undecided case. If the Supreme Court is telling us that we don't even know who makes clearly decided law, does it have to come from the Supreme Court, does it have to come from the Tenth Circuit? How is that not a debatable issue for purposes of qualified immunity? Because we said our law can create clearly established law. I think that's what your adversary would say, and that's what I would point out. And I would say that that's an excellent argument. But on the other hand, my police officers, or me as the defense attorney, is going to say, yeah, but the Supreme Court is saying we're not sure that what you're saying is correct. And so how is that not legitimately a debatable point for purposes of the Tenth Circuit? Because the Tenth Circuit has made it non-debatable. Otherwise, the whole thing would be a game, right, that we're all just waiting for the Supreme Court to hear all the cases that we know they're not? And I am sympathetic to that. And I would say to you I agree that if clearly established law always has to be out of the Supreme Court. Well, it doesn't. Then you would never get that. Does that solve your problem? It solves my problem for moving on, yes, Your Honor. But my point simply is this, is that it is an area that is causing a lot of debate. And so if the standard is, is that police officers are somehow supposed to tease out this. Where's all this debate? Recite the debate. Well, if you go to Emmons, the Supreme Court says that we're assuming without deciding that clearly established law can come from. Clearly established Supreme Court precedent and clearly established law are not one and the same thing. I accept, Judge Lucero, your distinction. But my point is that there is a question, at least in some circles, in those kinds of dicta. And it is dicta, and I agree with Judge. Let me move you to the excessive force claim. You know, this is a situation where a police dog was sent in and attached itself to not the person, the subject of the warrant, but a bystander. And dragged him out of bed and bit him, I guess, at least twice, maybe three times, causing him to have to have stitches. I mean, I guess that if they're serving a warrant, they can have, take the people who live in the house that aren't the subject of the warrant and sit them on a couch or on the curb or something in order to protect themselves. But really, you can sick a police dog on innocent bystanders? Your Honor, no, you cannot sick a police dog intentionally on innocent bystanders. I agree with you, Judge McHugh, that you could not do that. That's not what we have here. What we have here is we know that we have a person in the house for which there is a search, for which there is an arrest warrant, and for which there is knowledge that he's in that location. They go in, they announce, as set out in the complaint, I'm only going from what's on the face of the complaint, loudly that they're going to let this dog go if they do not come out. They don't come out. And so if you look at the cases, and I think we cite those in the briefs as it relates to that inquiry and to be able to have probable cause to do that, but if you look at these cases such as Westby, which is the United States Supreme Court case that allows, I'm sorry, I said Westby, that's not the case I meant to cite, to the Story v. Taylor case, which is out of the Tenth Circuit, where you're able to use the ability to be able to do a protective sweep. Well, does the ability to carry on a protective sweep cover the situation here of sending Fido into the room to where the guy's watching TV, the TV's on loudly, apparently he doesn't hear anything, correct? He's intoxicated and the TV's on loud. And so now, does the definition of a protective sweep broad enough to cover sending in Fido as the first responder? Yes. What case tells us that? Well, I think that if you go to the Thompson case, which is, it's an unpublished decision from this court, that's not clearly established law yet. It's not published. But even looking at Thompson, and if you look at basically every case you cited, it's use of a police dog on the defendant, the subject of the police action. Not, I didn't see a police dog being used to deal with innocent bystanders of a criminal actor. Agreed. Thompson, let me address two issues, both as to your point, Judge Lucero, and your point, Judge Eugene. Lucero does not involve that, and I agree with you that I don't have, there is not a case specifically on all fours as it relates to this. That's part of my point as to why it's qualified immunity. Which is one of my frustrations with qualified immunity. We always throw it, you know, say, yeah, they have qualified immunity because it's not clearly established. But then we never clearly establish anything. Because you go to the second problem. Because we go to the second problem. Yes, I sympathize with the plaintiff's counsel that have to deal with that. But, Judge Lucero, if it's officer safety, is the answer to your question, yes. If there's officer safety involved, then the protective suite for purposes of serving a warrant in a home is enough. And the language, the reason I like Thompson, even though it may not be clearly established law, and I agree unpublished opinions don't, I cite a footnote in my brief, though, that this circuit has said, it may not be good for purposes of establishing clearly established law. But it's pretty good that if we give you a case that says that what you did is constitutional and it's unpublished, then we can't really say later on that if you didn't follow that, that you have somehow violated clearly established law. And the language in Thompson is instructive. It says the use of dogs can make it more likely that the officers can apprehend suspects without the risk attendant to the use of firearms in the darkness, thus frequently enhancing the safety of the officers, bystanders, and the subjects. And so it does bring bystanders into Thompson, though that's not the factual situation. This was safer in the long run for Mr. Crawl than the officers going in. For the officer to go in and see if the guy's drunk in bed? Yes, with his gun out and in a dark situation and a dynamic circumstance. And if he does that and this person makes a furtive move or his hands aren't showing, then all of a sudden we've got somebody who's shot and not who has a few stitches in his knee. And for those purposes, I think that it does fall within the reasonable, objectively reasonable conduct. And one of the things I'll end with is that Mr. Crawl's attorney admits to the court at the district court level, and that's cited in Judge Verhollich's opinion, that he cites no cases and, in fact, admits that there are no cases on point. And whether we're frustrated by the fact that the granularity required, if we're frustrated with regards to the granularity that's required under the specificity that's needed for factual cases, for clearly established law, this is not that case to be frustrated with because this case just simply, if you had to make a dividing line, the cases break on these canine cases much closer in the light of what the conduct was of Deputy Wilson here. Thank you, Your Honor. Thank you, Your Honor. Your Honor, I don't admit there's no case on point. I would cite to this court the Stiegel case, Stiegel v. United States, U.S. Supreme Court case, which says the police may not enter a dwelling to execute an arrest warrant on a person who does not live there. That is Stiegel, that is Supreme Court law, that is clearly established. We allege in our complaint that Mr. Thompson did not live there. We allege in our complaint that the police did not reasonably believe that he lived there. We have met the requirements under Twombly, under Iqbal, under 12b-6 to get past a dismissal motion and we should not have been dismissed out. The reason the warrant is not in the record, Your Honor, is because we never got to that, because we did not even get past 12b-6. And all I'm asking at this point, Your Honor, is if we come back on summary judgment, maybe they get valid summary judgment and we don't ever come back again. Or we could come back on summary judgment. Well, what about the fact that you filed a contradictory complaint, one in which you say he's not residing there, and then in which you also allege that he is temporarily staying there? Because in my mind, temporarily staying is not equivalent to living. Well, that's... Because if you're... The law doesn't require that he's... If you say he's not... Under our circuit authority, it's not required that he be permanently residing there. Right. There's no such requirement. Okay. Our law basically says that temporarily staying... You define it by saying that you look to control. Those are the apparent indices of control. Okay. All right. Well, then where do you draw the line? I mean, if you're staying a few nights, are you living there? If you go to... If I stay... Well, that's the question. If I'm staying two nights at the back rack residence, I'm a guest. If I stay two months, I presume I'm temporarily staying there. Right. And the complaint doesn't... Well, if you're staying two nights... And temporarily staying is a guest. And I cite the federal statute that says that guest means someone who's temporarily staying somewhere. He's a guest. I mean, he's a guest at the place. I should have said guest. I poorly drafted the complaint. But he was staying there for a few nights. I mean, that's what essentially the complaint was intended to convey and didn't properly convey it. But they should not be able to glom onto that phrase and get my case dismissed. Let us have an opportunity to have some discovery. Let's find out what happened here. Again, Mr. Crump says the guy wasn't staying there early. He's saying he just came over to watch some TV. You know, what did they know? What did their police officers know? I think we're entitled to at least get to the point where we can get past 12 v. 6. You know, in Perez versus... What about the dog? Do you have any cases about their sticking... I just have Graham versus Connor, and those cases were issued by this court saying non-violent misdemeanors should not be treated, you know, with severe violence. You know, those are cases that I have. But there are, admittedly, no dog cases exactly on point to address this situation. I'll admit that. But Graham versus Connor is a reasonable and a standard. We maintain it was violated because this was unreasonable. Thank you. Thank you, counsel. Both of you were excused. It's a difficult case. I appreciate your time. The court is in recess until tomorrow morning. The case is submitted. Thank you.